THE ELFINMERE.

*(District Court, E. D. Michigan.* November 1, 1888.)

TOWAGE—STRANDING TOW.
    A steam-barge, coming down Lake Huron with three schooners in tow, allowed herself to approach so near a lee shore that, in endeavoring to turn about, the rear vessels drifted to leeward, and were stranded. *Held,* the propeller was in fault for not keeping further out into the lake.
*(Syllabus by the Court.)*

In Admiralty.

These were libels for negligence in the loss of the schooners Acontias and A. H. Moss. The facts of the case were substantially as follows: On the 28th of October, 1887, at about 7:30 P. M., the steam-barge Elfinmere left Cheboygan, Mich., bound for Toledo, with the schooners Nellie Mason, A. H. Moss, and Acontias in tow, in the order named. The wind was then light, and the weather somewhat hazy. Towards midnight the wind shifted to the north-east, and began to blow heavily; the sea increased, and snow fell in flurries during the night. The tow passed Presque Isle light about 2 o'clock in the morning, at a distance variously estimated at from a quarter of a mile to a mile and a half. Shortly after passing this light, land was dimly seen off the starboard bow. The lead began to indicate shoaler water, and the steamer's wheel was put hard starboard, with the intention of heading the tow into the wind, and holding the schooners until daylight, or until the storm abated. In so doing, however, the Acontias and the Moss took the ground, the line between the first and second schooners was either cut or parted, and the Acontias and Moss went ashore, and became a total loss.

The court was assisted upon the argument by Commander Elmer, of the United States Navy, and Capt. Joseph Nicholson, of the Lake Marine.

*H. H. Swan* and *F. H. Canfield,* for libelants.

*J. W. Finney* and *H. C. Wisner,* for claimant.

BROWN, J., *(orally.)* I have felt no particular doubt as to what the result of this case should be, but on account of the large interests involved, and because I thought it possible there might be some question

of seamanship upon which I should be glad to take their opinion, I have called to my assistance the experienced gentlemen who have kindly consented to sit with me. We are quite agreed as to the proper disposition to be made of the case.

We think the libelants make a *prima facie* case in showing that the Elfinmere was a new, large, and powerful steamer, perfectly competent to handle the tow that she had taken in charge; that she came down the lakes from the Straits of Mackinaw or from Cheboygan upon the ordinary course, nothing unusual occurring until they reached Presque Isle. On the way down, and during the evening, the wind, which appears to have been a light breeze from the north or north-west, settled down into a stiff gale from the north-east; the weather became hazy, and snow began to fall so thick as at times to obscure the lights. They seem, however, to have passed Presque Isle light at a convenient and safe distance, we will say from a mile to a mile and a half, and while running about six miles an hour, and, as shown by the charts, about six miles distant from abreast of the light, two of her schooners were found ashore. This six miles she covered in an hour, or somewhat less. We think this statement makes a *prima facie* case of negligence in the conduct of the tow, and throws upon the steam-barge the duty of explanation.

The defense in this case—and it has been elaborated with a great deal of ingenuity—is that, after passing Presque Isle light, the lights of the stern vessel, the Acontias, disappeared, indicating to the master of the steam-barge that she had left the tow, that the tow-line had been broken, cut, or thrown off, and that there was great danger that the remainder of the tow would be lost, unless extraordinary measures were taken to keep the vessels off the shore; and that, with that in view, the master undertook to make the lee of False Presque Isle, and get into the harbor under the island.

There are three subordinate questions arising in this connection: (1) Whether this course was taken by reason of the apparent loss of the Acontias; (2) whether it was prudent to attempt to make False Presque Isle harbor in the weather that prevailed that night; (3) whether the attempt was made in a prudent way.

In regard to the first question, of the connection between the loss of the Acontias and the taking of this course, I have still some doubt. At first it seemed to me quite clear that it was a defense that had its origin in the imagination of counsel, rather than the facts of the case; but there is undoubtedly some reason for saying that the master became alarmed at the disappearance of the Acontias' light, and made up his mind that some unusual precautions were necessary, but whether this be so or not we do not regard as very material. There can be no question that they passed within sight of the range lights of Presque Isle, which are considerably to the westward of the light-house; and, as the tow must at that time have been three miles and a half to four miles from these range lights, it is not, as it seems to us, improbable that the crews of the tow may have seen the land; that is, that the snow may have lifted so much as to have enabled them to see the shore. It does not seem to us that their

testimony in this connection is at all incredible, and we think they may have seen the land for some time before they struck.

But the important questions are, was the master justified in attempting to seek this harbor that night? and did he do it in a proper manner? With regard to the first question we have great doubt whether he was justified in attempting to enter an unlighted harbor in a snow-storm, and in the night, when his only guide must have been the lights at the entrance of the harbor, which in that state of the weather it was difficult, if not impossible, for him to see at the ordinary distance. We have very grave doubt whether prudence should not have dictated to him to keep out into the lake upon a course south-east by east, half a point or a point further to the southward than he did,—a course which would have carried him clear of the land.

As to the question whether he used proper precautions in attempting to make False Presque Isle harbor, we have no doubt whatever. We think there was gross negligence in taking the course he did after passing Presque Isle light. Whether he took a course which pointed directly to the shore, as claimed by the libelants, and which ultimately led him so near the shore as to entail the loss of his two rear vessels, we have considerable doubt. We can hardly believe that he would take a course so far to the southward as that, but it is very evident that he took a course which soon carried him within sight of the shore, and when within sight of it, it was obviously too late to do anything, because, whether he turned sharp around and headed into the wind, or made a slow turn, in either case the tow would have tailed so far to the shore that the rear vessel would inevitably have got aground before he could get them off. If he had made up his mind to make False Presque Isle harbor that night, it seems to us that he should have kept on a course that would have kept him out of sight of land, making ample allowance for leeway, and should, by gauging the distance upon the chart with his mileage per hour, have continued on that course long enough to have gotten well below the island, and then to have ported and come around in the lee of the land. If he were steaming at the time at the rate of six miles an hour, and had continued upon a course south-east or south-east by east for two hours and a half or three hours, he might then, with probable safety, have ported and come around, and found smooth water under the lee of the land. But the course that he did take was altogether, as it seems to us, too near the land, and was one which could hardly fail, under the circumstances existing that night,—the thickness of the weather, and the direction and velocity of the wind,—to have taken the tow ashore. I have not changed the opinion at which I arrived last winter when the testimony was taken: that a grave fault was committed by the propeller in taking a course too near the shore. We think it was her duty beyond all question either to have headed into the wind, in the first place, or to have kept so far from the shore that she could get her tow into the wind without danger of the rear schooner's tailing and drifting upon the shore.

A decree will be entered for the libelants, with the usual reference to a commissioner to assess the damages.